SINK & EDWARDS, INC., Appellant (Third-Party Defendant Below),

v.

HUBER, HUNT & NICHOLS, INC., Appellee (Third-Party Plaintiff Below).

No. 1-583A160.

Court of Appeals of Indiana, First District.

Jan. 11, 1984.

Rehearing Denied Feb. 15, 1984.

Transfer Denied April 23, 1984.

292

Alvin E. Meyer, Stephen J. Peters, Christine F. Royce, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellant.

Hugh Watson, Locke, Reynolds, Boyd & Weisell, Indianapolis, Melville E. Watson, Greenfield, for appellee.

ROBERTSON, Judge.

Sink & Edwards, Inc. (Sink), a subcontractor, appeals the summary judgment entered on behalf of the contractor, Huber, Hunt, & Nichols, Inc. (Huber) pursuant to the indemnification provision contained in their construction contract.

We affirm in part, reverse in part, and remand.

Huber contracted with the Allison Division of General Motors on April 4, 1966, to perform construction. Huber then entered a subcontract agreement with Sink on October 3, 1967. The subcontract contained an indemnity clause. On January 15, 1968, Robert Allison, an employee of Sink, sustained injuries when he fell from the roof of the construction project. Allison brought suit against General Motors, Huber, and the project architect. Huber filed a third party complaint against Sink for indemnity. The trial court granted Sink's motion to sever the third party complaint from Allison's action. Allison's trial resulted in a directed verdict being entered on behalf of Huber on the theory that Huber did not owe Allison a duty of care. Allison appealed the trial court decision, which was reversed. *Allison v. Huber, Hunt, & Nichols, Inc.*, (1977) 173 Ind.App. 41, 362 N.E.2d 193.

The case was set for retrial in 1978. The parties began settlement negotiations and Sink was informed of the pending retrial. Three days prior to the scheduled retrial, Huber received a settlement offer of $150,-000. Sink was notified of Huber's intention to settle and given the opportunity to take over the defense of the action. The record does not reveal any correspondence from Sink. Huber settled with Allison and the action was dismissed with prejudice on February 16, 1978.

Sink filed its motion for summary judgment on Huber's third party complaint on July 8, 1982. Huber also filed a motion for summary judgment. The trial court granted Huber's motion and ordered Sink to pay Huber $150,000 and interest calculated from the date of release of Allison's claim until the entry of summary judgment.

Sink alleges the trial court erred by granting Huber's motion for summary judgment because the contract did not explicitly state that Sink would indemnify Huber for Huber's negligence. The indemnification provisions of the contract state:

Subcontractor further specifically obligates himself to contractor in the following respects:

(a) To indemnify contractor against and save harmless from any and all claims, suits, liability, expense or damage for any alleged or actual infringement or violation of any patent or patent right arising in connection with this Subcontract and anything done thereunder;

(b) To indemnify contractor and save it harmless from any and all claims, suits or liability resulting from any act or omission of subcontractor, or contractor or their officers, agents, employees, or servants in any manner related to the subject matter of this Subcontract, including, without implied limitation, claims, suits or liability for injury to, or death of, persons, including the employees of either contractor or subcontractor and for damage to property;

(c) To pay for all materials furnished and work and labor performed under this Subcontract, and to satisfy Contractor and Owner thereupon whenever demand is made to the end that Contractor, Owner and the premises shall be saved harmless from any and all claims, suits, or liens therefor by others than the subcontractor.

Sink argues these provisions lack sufficient explicitness to require it to indemnify Huber.

■ Contracts providing indemnification for indemnitee's own negligence, if "knowingly and willingly" made, are valid and enforceable in Indiana.[1] *Loper v. Standard Oil Co.*, (1965) 138 Ind.App. 84, 211 N.E.2d 797. However, such provisions are strictly construed and were not held to

provide indemnification unless expressed in clear and unequivocal terms. It has been said in reference to the clear and unequivocal test, that "as a general rule, it is not required to be an express reference to the negligence of the indemnitee". *Norkus v. General Motors Corp.* (S.D.Ind.1963) 218 F.Supp. 398.

Sink bases its argument primarily upon the decision of *Indiana State Highway Commission v. Thomas*, (1976) 169 Ind. App. 13, 346 N.E.2d 252. In *Thomas*, the court examined the clear and unequivocal test and concluded:

We find it difficult to envision an indemnity provision which defines 'the cause [of the injury] in terms of physical or legal responsibility ... specifically, not generally ...', and in terms which are 'clear and unequivocal', which does *not* contain an express stipulation as to indemnity against the indemnitee's own negligence. The improbability of finding such a provision might alone compel the conclusion that an express stipulation is required. But we need not rest upon our own logic. Analysis of the principal case upon which the court in *Norkus* relied, *Batson-Cook Co. v. Industrial Steel Erectors*, (5th Cir.1958), 257 F.2d 410, and the decisions, in other jurisdictions, to which *Batson-Cook* has led, reveal that explicit reference to the indemnitee's negligence is a pre-requisite to his indemnification therefor.

346 N.E.2d at 261.

Sink argues *Thomas* requires an explicit statement that it shall indemnify Huber for Huber's negligence. Since the contract does not contain an explicit statement, Sink contends that the trial court erred by not entering summary judgment on behalf of Sink.

■ We agree with Sink that *Thomas* now requires an explicit statement. However, we do not agree with Sink's argument that it is entitled to summary judgment.

---

**1.** The enactment of IND.CODE § 26–2–5–1, which renders broad form indemnity clauses in construction and design contracts unenforceable, was enacted subsequent to the execution of the contract. Obviously, the posture of this appeal would be greatly altered if the legislation was controlling.

Huber correctly asserts that in interpreting contracts, courts will attempt to determine the intent of the parties at the time the contract was made as disclosed by the language used to express their rights and duties. *Jones v. City of Logansport,* (1982) Ind.App., 436 N.E.2d 1138. In general, pronouncements of common law made in rendering judicial opinions of civil cases have retroactive effect unless such pronouncements impair contracts made or vested rights acquired in reliance on an earlier decision. *Texas Eastern Transmission Corp. v. Seymour National Bank,* (1983) Ind.App., 451 N.E.2d 698. Huber argues that its contract rights will be impaired if the *Thomas* standard is applied to the present case.

■ We agree with Huber that the Thomas standard will impair their contract rights. Sink and Huber entered their contract in 1967, nine years prior to *Thomas.*[2] *Thomas* relied greatly on *Norkus v. General Motors Corp., supra* and *Loper v. Standard Oil Co., supra.* These cases established the general rule that it was not necessary to have an express reference to the negligence of the indemnitee, but that in order to require the indemnitor to indemnify the indemnitee for its own negligence, the obligation must be expressed in clear and unequivocal terms.

■ In applying the above standard to the present case, the trial court properly concluded that Sink must indemnify Huber. The relevant portion of the contract requires indemnification from:

Any and all claims, suits, or liability resulting from any act or omission of subcontractor or contractor or their officers, agents, employees or servants in any manner related to the subject matter of this subcontract, including, without implied limitation, claims, suits or liability for injury to or death of, persons, includ-

ing the employees of either contractor or subcontractor ...

Although, the indemnification clause does not expressly mention the term negligence, the agreement clearly requires Sink to indemnify Huber for acts or omissions by officers, agents, employees, or servants of the contractor or subcontractor including suits for injury or death of employees of the contractor or subcontractor. This clause precisely covers the operative facts of this case because Allison, an employee of Sink, was injured as a result of Huber's omission of adequate barricades, fences, or guards to prevent Allison from falling off the roof. The trial court did not err in concluding that Sink must indemnify Huber because the language clearly contemplates indemnification for the type of injury that Allison suffered.

Sink alternatively argues the trial court erred by entering summary judgment even if the clear and unequivocal test is used. Sink specifically challenges whether it knowingly and voluntarily entered an indemnification agreement.

■ Summary judgment is appropriate only when there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Stuteville v. Downing,* (1979) Ind. App., 391 N.E.2d 629. If any doubt remains regarding the existence of a genuine issue of material fact, such doubt must be resolved against the movant. Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts. *Hayes v. Second Nat. Bank of Richmond,* (1978) 176 Ind.App. 299, 375 N.E.2d 647. However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of litigation. *Stuteville v. Downing, supra.* The

**2.** Sink points out that *Thomas* applied its standard retroactively and it argues that it would be proper to do the same. *Thomas* is silent regarding a retroactive application of the law and we do not read new language into it. *Thomas,* in

analyzing the prior cases, was the first pronouncement that an explicit statement of negligence for indemnifying the indemnitee was necessary, and thus refuted the prior general rule of *Norkus, supra.*

party opposing summary judgment need not divulge his entire case, but must come forward with specific facts which show there is a genuine issue as to the material facts. *Moll v. South Central Solar Systems, Inc.*, (1981) Ind.App., 419 N.E.2d 154.

Sink argues Huber failed to establish that Sink "knowingly and willfully" agreed to indemnify Huber for its indemnity agreement. Sink supports this position with the fact that the agreement was a form contract prepared by Huber. Sink contends these facts establish a disparity of bargaining power in favor of Huber and that Sink did not knowingly and willfully agree to indemnify Huber.

■■■ A review of the record discloses that Sink failed to include any affidavits or other evidence regarding disparity of bargaining power or lack of knowledge in accepting the indemnification clause. In *Carr v. Hoosier Photo Supplies, Inc.*, (1982) Ind., 441 N.E.2d 450, our supreme court found that a disclaimer which limited liability was effective against a knowledgeable party who had failed to read the disclaimer notice. The opinion provided:

> However, where, as here, a knowledgeable party, aware that such terms are part of the proposed contract, enters into the contract without indicating any non-acquiescence to those terms, we must assume he has assented to those terms. American Jurisprudence speaks to the necessity of showing assent in these words:
> There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. However, ordinarily no more is meant by this than that an expression or manifestation of mutual assent, as an objective thing, is necessary .... for a contract to be binding, the parties must have distinct and common intention which is to be applied, however, in determining whether the parties possessed the necessary intention to contract. This means that the manifestation of a party's intention, rather than the actual or real intention is ordinarily controlling ....

> The entry of the parties into a contractual relationship must be manifested by some intelligible conduct, act, or design. Assent in the sense of the law is a matter of overt acts and expressions ... 17 Am.Jur.2d *Contracts* §§ 18, 19, (1964) at 354–55.

441 N.E.2d at p. 455–456.

Sink's signing of the contract indicates a manifestation of assent to the indemnification terms. It was necessary for Sink to submit some evidence to the trial court that it did not knowingly agree, accept or understand such provisions. Furthermore, Sink failed to establish an inequality in bargaining. We do not believe that the mere fact that one party has submitted a form contract in sophisticated business transactions between sophisticated business entities establishes a disparity in bargaining power. The present case is not analogous to *Weaver v. American Oil Co.*, (1971) 257 Ind. 458, 276 N.E.2d 144. In *Weaver*, an indemnification clause between a service station leasee and a multinational corporation was held to be unconscionable where the lessee had attained only one and one half years of secondary education, would not be expected to know the meaning of legal or technical terms, and the superior bargaining power was patently obvious. There is nothing in the present case to establish a disparity in bargaining power between Sink and Huber. Sink failed to establish a genuine issue of material fact.

■ Sink argues the trial court's entry of summary judgment is contrary to law and public policy because it alleges the judgment circumvents the Workmen's Compensation Act, IND.CODE 22–3–2–1 *et seq.* Sink forwards a minority decision, *Paul Krebs & Associates v. Matthews & Fritts Const. Co., Inc.*, (1978) Ala., 356 So.2d 638, to support its position. The Alabama court held that contractual indemnification was barred by the exclusive remedy provision of the Alabama Workmen's Compensation Act when a third party indemnitee seeks recovery from an indemnitor-employer for claims arising from injuries to an employee of the indemnitor-em-

ployer. Sink argues the exclusive remedy provision of the Indiana Act should be similarly construed.

The exclusive remedy provision of the Indiana Workmen's Compensation Act has been recently held not to bar indemnification by a third party tort-feasor from a subcontractor whose employee was injured by the third party tort-feasor. *Henry C. Beck Co. v. Fort Wayne Structural Steel* (7th Cir.1983) 701 F.2d 1221. Unfortunately for Sink, the present action did not arise in Alabama. The *Krebs* decision was based upon Alabama case law. Indiana has long recognized the validity of indemnification for the indemnitee's own negligence. *Loper v. Standard Oil Co., supra.* The *Beck* opinion contained the following summary:

> Nothing in the rationale of the Workmen's Compensation Act precludes an employer from voluntarily waiving the immunity provided by that Act.

701 F.2d at 1228.

To adopt Sink's position would be contrary to Indiana's case law concerning indemnification.

Sink also challenges whether Huber was the real party in interest in this litigation. By the time summary judgment was entered, Huber's settlement had been paid by its insurer. Thus, Sink argues Huber did not have a present and substantial interest in the litigation. *See, Risner v. Gibbons,* (1964) 136 Ind.App. 45, 197 N.E.2d 184. Sink also argues Huber failed to establish it was acting under compulsion in settling the suit and its payment to Allison was voluntary.

It is not disputed that Huber was the real party in interest when it filed the third party complaint against Sink. In a case of transfer of interest subsequent to the commencement of the action, substitution of the person to whom the interest is transferred is permitted but is not required and the action may be continued by or against the original party. Ind.Rules of Procedure, Trial Rule 25(C), *Braun v. Loshe,* (1979) 180 Ind.App. 641, 390 N.E.2d 189. Trial Rule 25 is permissive. We fail to understand what prejudice Sink could have suffered by this action being brought in Huber's name, since this action had been pending for over four years after the settlement.

Sink also claims the trial court erred by granting summary judgment because there is a genuine issue of fact as to whether Huber's settlement with Allison constituted a voluntary payment. Indemnity does not cover losses for which the indemnitee is not liable, but which he voluntarily pays. *Vernon Fire & Casualty Ins. Co. v. Graham,* (1975) 166 Ind.App. 509, 336 N.E.2d 829.

In essence, Sink argues Huber's settlement of Allison's claim constitutes a voluntary payment because there was no judicial determination of negligence. The evidence is uncontroverted that Huber gave Sink notice of its intent to settle Allison's claim and offered Sink the opportunity to assume defense of that action.

An indemnitor who denies liability on an indemnity contract thereby confers on the indemnitee the right to exercise reasonable judgment in settling the case without further consultation with the indemnitor. *Price v. Amoco Oil Co.,* (S.D. Ind.1981) 524 F.Supp. 364. The trial court in *Price* held that the indemnitee's decision not to proceed to judgment provides no basis for the indemnitor's assertion that a settlement constituted a voluntary payment, but that a question as to whether the settlement was fair and reasonable remains. There was no determination of the reasonableness of Huber's settlement with Allison. We agree with the *Price* analysis and therefore, reverse on this issue and remand for a determination of whether the settlement was reasonable.[3]

---

**3.** In reversing upon this issue, we are not implying that the amount of settlement was unreasonable, but rather hold that judicial determination of reasonableness must be made. Huber claims that Sink should be equitably estopped from challenging the amount of settlement. This is also a question for the trial court. We also note

■ The final issue Sink raises is whether the trial court erred by awarding interest to Huber when Huber did not seek such relief in its motion for summary judgment or in its complaint. Sink argues that it may have some defenses to the award which were not presented during the summary judgment hearing. Whether Huber was entitled to prejudgment interest or whether Sink could assert equitable defenses are questions which must be resolved by the trial court.

In rendering this opinion, we are not digressing from the *Thomas* opinion, but rather are judging the contract by the law as it existed at the time of the contract's execution. The trial court correctly held Huber was entitled to indemnification, but erred by not conducting a hearing on the reasonableness of the settlement amount and on the awarding of interest. These two issues are reversed and remanded for a determination consistent with this opinion.

Costs assessed two-thirds to appellant and one-third to appellee.

Judgment affirmed in part, reversed in part and remanded.

NEAL, P.J., and RATLIFF, J., concur.

that we will not retain jurisdiction over this    remand.